NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

BYRON W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, B.W., L.W., *Appellees*.

No. 1 CA-JV 19-0311
FILED 4-7-2020

Appeal from the Superior Court in Maricopa County
No. JD33161
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

**¶1**        Byron W. (father) appeals the superior court's order terminating his parental rights to B and L, his biological children. Because reasonable evidence supports the superior court's order, the termination of parental rights is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        DeChoal M. (mother) and father are the biological parents of B and L (the children), both born August 19, 2016. Mother tested positive for methamphetamine while pregnant with the children. Father reported using marijuana in February 2016 and submitted a diluted urinalysis test to the Department of Child Safety (DCS) as part of DCS's services in August 2016. After the children were born, DCS filed an in-home dependency petition, offered in-home services, and placed the children with their parents in a safety monitor's home with a safety plan.

**¶3**        Mother and father violated the safety plan and were forced to leave the safety monitor's home. Father hid this fact from DCS for a week. DCS filed a motion to change the children's physical custody from mother and father to DCS. In January 2017, the superior court granted DCS's motion. The children were placed with a maternal great aunt. In January 2018, the superior court changed the case plan to severance and adoption.

**¶4**        In February 2018, Dr. George Bluth conducted a psychological evaluation of father. Dr. Bluth testified to his findings at the August 2019 severance hearing. Dr. Bluth opined that father's continued use of marijuana is a barrier to reunification in this case, regardless of whether the use is illegal or is medicinal and legal.

**¶5**        In September 2018, the superior court conducted a contested severance hearing to consider the State's petition to sever the children's parental relationship with mother and father. The superior court

2

terminated mother's parental rights but denied father's termination because DCS did not meet its burden of showing father (1) was unable to remedy the circumstances that caused the out of home placement, and (2) was substantially likely to be incapable of exercising proper and effective parental care and control in the near future.

¶6        The superior court specifically stated:

> The Court is unable to make this finding as to [f]ather— [DCS] had not, by the time of trial, assessed [f]ather's living arrangements or employment so as to permit the Court to determine whether [f]ather had remedied or failed to remedy instability that previously caused out-of-home placement of the [c]hildren. [. . .] Given the circumstances discussed as to [f]ather above, the Court does not find him incapable of exercising proper and effective parental care and control in the near future. Quite possibly, [f]ather will be able to exercise that care and control in the near future or would be able to do so now.

¶7        The superior court changed the case plan to reunification for father. Father subsequently missed many of his scheduled urinalysis tests, family-time coaching sessions, and visits with the children. Father continued to live at his mother's house, which DCS indicated was not an appropriate residence for the children. Father also did not hold a steady job.

¶8        In April 2019, the superior court granted the guardian ad litem's motion to change the case plan to severance and adoption. Specifically, the motion alleged father continued to lack stable housing, failed to demonstrate financial stability, regularly canceled or missed visits, and continuously tested positive for tetrahydrocannabinol, showing marijuana use.

¶9        In August 2019, the superior court held a contested severance hearing. The superior court granted the motion to sever father's parental rights. The superior court found father's "inability to provide a safe and stable home for his [c]hildren" by the time of the hearing proved a substantial likelihood he will not be capable of exercising proper and effective parental care and control in the near future. As to the findings from the September 2018 hearing, the superior court said "[f]ather's lack of progress since that Ruling issued has belied [the] prognostication" he could possibly exercise proper care and control in the near future.

**¶10**         Father timely appealed. Father argues the superior court erred when it found he will not be capable of exercising proper and effective parental care in the near future. This court has jurisdiction under A.R.S. §§ 8-235 and 12-120.21(A)(1).

**ANALYSIS**

**¶11**         The superior court may terminate parental rights if it finds, by clear and convincing evidence, the existence of at least one statutory ground for termination. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶ 12 (2000). The superior court must consider those "circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007) (internal quotations omitted). This court will uphold the superior court's findings of fact unless they are unsupported by reasonable evidence, and will affirm a termination order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This court will not reweigh evidence or redetermine the credibility of witnesses. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

**¶12**         Grounds for termination are governed by A.R.S. § 8-533(B), which identifies the statutory grounds for termination and requires the court also consider the best interests of the children. Here, DCS moved to terminate father's parental relationship under A.R.S. § 8-533(B)(8)(c). This subsection states when a "child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order," the parental relationship may be terminated if: (1) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement," and (2) it is substantially likely "the parent will not be capable of exercising proper and effective parental care and control in the near future." *See id.*

**¶13**         Here, father does not dispute he was unable to remedy the circumstances causing the children's out-of-home placement by the time of the August 2019 hearing. Father also does not dispute the superior court's best interests' determination. Instead**,** father argues the superior court erred in finding a substantial likelihood he will not be capable of exercising proper parenting in the near future. Father essentially asks this court to reweigh evidence from the superior court, which this court will not do.

¶14　　　　Father admittedly made positive steps from his situation at the first severance hearing. Those improvements, however, do not establish the superior court abused its discretion in concluding father would not be capable of providing effective parental care in the near future. *See In re Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶15　　　　At the September 2018 severance hearing, the superior court denied DCS's motion to terminate father's parental rights in part because DCS failed to assess father's then current living arrangements and employment. Between the two severance hearings, father had an eleven-month opportunity to improve those circumstances to establish he could provide a stable home environment for his children.

¶16　　　　In that eleven-month period, father still did not adequately remedy his unstable employment. As of the August 2019 hearing, father did have a full-time job, but it was through a temp agency. Further, he only started the job two days before the hearing. Before this temporary job, father worked at a restaurant but quit after a few months because he was not given a raise. Father admits he has gone through "too many" jobs and his employment has been intermittent over the course of this case. Father's habitual job changes and choice to seek work through a temp agency support the superior court finding a substantial likelihood he will not secure stable employment in the near future.

¶17　　　　Father secured a car, but had not yet secured suitable housing where his children could live in the event of reunification. As of the August 2019 hearing, father lived at his mother's house, which DCS believed was not an appropriate home for his children. Father applied for and was accepted to rent an apartment but could not afford to pay for it because he had to make car payments.

¶18　　　　In its severance decision, the superior court specifically identified father's "inability to provide a safe and stable home for his [c]hildren" as an indicator he would be unable to be an effective parent in the near future. In short, father was given eleven months to secure stable and safe housing but was unable to do so. The superior court found his lack of progress in securing housing indicated he was unlikely to do so in the near future. Reasonable evidence supports this finding.

¶19　　　　The children's best interests are not served by waiting indefinitely for father to become a capable and effective parent. *See JS-501568*, 177 Ariz. at 577. The superior court set a case plan of family

reunification for father after the September 2018 severance hearing. Father did not follow this plan. Contrary to Father's arguments on appeal, the superior court's decision is supported by reasonable evidence.

## CONCLUSION

**¶20** Reasonable evidence supports the superior court's order to terminate father's parental rights. Accordingly, this court affirms.



AMY M. WOOD • Clerk of the Court
FILED:  AA